91 N.J. Super. 504 (1966)
221 A.2d 547
DEANE H. EADIE, PLAINTIFF-RESPONDENT,
v.
SAMUEL B. POLE, III, DEFENDANT-APPELLANT, EVENING NEWS COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY; AND JOHN T. SCHOFIELD, PUBLISHER OF THE EVENING NEWS COMPANY, INC., (OTHER) DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1966.
Decided June 20, 1966.
*505 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Harry Green argued the cause for appellant (Messrs. Rogovoy, Porreca & Okoniewski, attorneys).
Mr. William Gallner argued the cause for respondent (Messrs. Gallner and Kleiner, attorneys).
*506 The opinion of the court was delivered by KILKENNY, J.A.D.
This is a libel action. On cross-motions for summary judgment by plaintiff and defendant Pole, the trial court denied defendant's motion, but it granted plaintiff a summary judgment against Pole on the issue of liability. Defendant's counterclaim for libel was also dismissed. The quantum of damages recoverable by plaintiff was reserved for trial by jury. Defendant Pole appeals pursuant to leave granted under R.R. 2:2-3(a).
At the time in issue plaintiff was a real estate salesman, was employed by several business concerns, and was one of the three appointed tax assessors of City of Bridgeton, in Cumberland County. Defendant was a practicing physician in that city and a candidate for city council in the 1963 election.
On October 30, 1963 defendant at a public meeting made a statement which was published in the Bridgeton Evening News, a newspaper published and circulated by the corporate defendant in Bridgeton. After declaring in the statement that he was dedicated to the idea of "one qualified assessor, free from political pressures, to replace Bridgeton's present three man board" and that this assessor "should be properly schooled and fully qualified," defendant noted that in several recent moves it appeared that the way was being paved for the appointment of Deane H. Eadie (plaintiff) to this post. He then added the following allegedly defamatory remarks:
"This would indeed be an outrage since Mr. Eadie is not free of pressures nor is he qualified as an assessor. He is a part-time employee of Republican Candidate for Mayor Eugene Laning and a part-time employee of Alex Morvay in the Equitable Realty Company." (Italics ours)
The trial court determined that "the statements of the defendant suggested to the average newspaper reader that the plaintiff was under the influence of and would be pressured by the individuals named in said statement, all of which would be improper for a public official, and that he would act from improper or corrupt motifs." It concluded *507 that the statement was libelous as a matter of law, and no special damage need be proved. The trial court also found that the recent case of The New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), was not applicable and the statement did not stand the test of absolute or qualified privilege. Based upon these determinations and findings, the judgment under appeal was entered.
If the words used "are susceptible of a single imputation and that one is defamatory, the court must declare them actionable in themselves and limit the issue to that of damages." Mosler v. Whelan, 28 N.J. 397, 405 (1958). On the other hand, "If they are vague or ambiguous or reasonably susceptible of legally innocent as well as defamatory significance, it is for the jury to say in the light of the circumstances disclosed by the evidence and the entire context of the writing whether they were understood to be defamatory by the average reader who saw them." Ibid.
It is our opinion that the words were reasonably susceptible of legally innocent as well as defamatory significance. To say of a person that he is "not free of pressures" does not necessarily mean that he will submit wrongfully thereto. It may be found merely to mean that the person is in a situation where pressures may be applied to him by others, which is not necessarily defamatory. To say in a political campaign that the anticipated appointment of an individual as the single assessor of a municipality would be "an outrage" might be an indulgence in an intemperate use of a verbal expression of opinion, but the expression does not reflect a single defamatory imputation. To refer to a prospective appointee as not "qualified" as an assessor is not defamatory per se, when there is no specific false recital of fact in alleged support thereof. It is merely an expression of opinion. The public is at liberty to express opinions as to the qualification of public officials or candidates for public office. We do not agree with plaintiff's contention that a tax assessor does not hold a public office.
*508 Accordingly, we conclude that the trial court erred in granting summary judgment in favor of plaintiff on the issue of liability. The question was one for the jury to decide.
The Supreme Court of the United States has recently expanded the rule laid down in The New York Times Co. v. Sullivan, supra. See Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), wherein the Times decision was construed as holding that "under the First and Fourteenth Amendments a State cannot award damages to a public official for defamatory falsehood relating to his official conduct unless the official proves actual malice  that the falsehood was published with knowledge of its falsity or with reckless disregard of whether it was true or false." (at p. 671). The above rule in the Times case, applied therein to the case of an elected public official, was extended in Rosenblatt v. Baer to appointed public officials, "at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." 86 S.Ct., at p. 676.
An assessor in a municipality of the size of the City of Bridgeton would seemingly be in that category of "public officials." Plaintiff was a public official, therefore, at the time of the statement in issue. Consequently, insofar as the statement might have been interpreted by the average reader to relate to his official conduct as assessor, it would not be actionable even were it a defamatory falsehood without proof of actual malice as defined in the Times case. Defendant had, of course, denied any actual malice. That issue was necessarily one for resolution by the jury.
We note, additionally, that defendant had pleaded in his answer the separate defense of truth. The trial court did not note the presence of that important issue in its opinion. At oral argument plaintiff's attorney more or less conceded that the issue of truth of the publication would require a trial *509 and that, to that extent at least, summary judgment of liability could not be granted.
What we have said above is without prejudice to the availability of fair comment as a defense to this action.
On the record before us, as it now stands, the counterclaim presents legal and factual issues which require trial.
For the foregoing reasons, the summary judgment in plaintiff's favor as to liability and dismissing defendant's counterclaim is reversed and the matter is remanded to the trial court for a plenary trial. There should be a full and careful pretrial conference and a carefully drawn pretrial order. See Nusbaum v. Newark Morning Ledger Co., 33 N.J. 419, 427 (1960); Nusbaum v. Newark Morning Ledger Co., 86 N.J. Super. 132, 157 (App. Div. 1965).
Reversed and remanded.